UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
——

KODY PADGETT, #501495,

                   Plaintiff,              Case No. 1:10-cv-950

v.                                   Honorable Paul L. Maloney

PATRICIA CARUSO, et al.,         **REPORT AND RECOMMENDATION**

                 Defendants.
_____/

       This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff is currently a security level IV inmate in the Oaks Correctional Facility. His verified complaint concerns events that occurred during his confinement on August 14, 2010, at the Ionia Bellamy Creek Correctional Facility (IBC). Plaintiff named four State employees at IBC as defendants, but the court dismissed all of plaintiff's claims on initial screening other than his Eighth Amendment claims of excessive force against defendant Residence Unit Officer (RUO) Ronny Wilson and of deliberate indifference against defendant RUO Nicholas Groom. (10/18/10 Opinion and Order, docket #s 8, 9). Plaintiff sues defendants Wilson and Groom in their individual and official capacities and seeks declaratory and injunctive relief and damages. The matter is now before the court on defendants' February 11, 2011 motion for summary judgment. (docket # 18). Plaintiff failed to file a brief in opposition to defendants' motion, and the motion is ready for decision. For the reasons stated herein, I recommend that all plaintiff's claims for declaratory and injunctive relief be dismissed because they are moot and that all plaintiff's claims against defendants in their official capacities for damages be dismissed with prejudice because they are barred by Eleventh Amendment

immunity.  I further recommend that defendants' motion for summary judgment be granted in part and denied in part.  The motion should be granted on plaintiff's claim against defendant Groom and a partial judgment should be entered in Groom's favor.  The motion should be denied on plaintiff's Eighth Amendment excessive force claim for damages against defendant Wilson in his individual capacity.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that

"there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

Plaintiff's complaint is verified under penalty of perjury and is considered as his affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.1992). Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir. 2006); *see also Stine v. State Farm Fire & Cas. Co.*, No. 10-5189, 2011 WL 2535272, at * 1 (6th Cir. June 27, 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

Although plaintiff elected not to file a response to defendants' motion for summary judgment, the court may not for that reason alone enter judgment against plaintiff. *See Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991); *accord Cacevic v. City of Hazel Park*, 226 F.3d 483,

486 (6th Cir. 2000). Rather, the court is required to examine defendants' summary judgment motion in light of the whole record to ensure that the defendants have satisfied their initial burden. *See Thurmond v. County of Wayne*, Nos. 09-1078, 2241, 2011 WL 2270901, at * 8 (6th Cir. June 10, 2011).

## Proposed Findings of Fact

The following facts are found in the verified complaint and defendants' submissions.[1] On August 14, 2010, plaintiff was incarcerated in the Ionia Bellamy Creek Correctional Facility (IBC), serving a sentence of 4 years and 9 months to 15 years for the crime of second-degree home invasion. On the day in question, plaintiff was returning to IBC's Unit 2, a protective segregation housing unit, after serving a sanction of detention in Unit 8, IBC's segregation housing unit, as a result of a major misconduct report. (Compl., ¶ 2). That night, approximately between 8:45 p.m. and 8:55 p.m., he was issued another major misconduct report for disobeying a direct order, stemming from his refusal to return to his cell. (*Id.* at ¶ 3). As a result, plaintiff was escorted back to Unit 8 to be placed on temporary segregation status. *Id.* Plaintiff awaited a mandatory strip search in one of Unit 8's shower stalls, which was conducted by RUO Ronny Wilson. (*Id.* at ¶¶ 4-5). Plaintiff "is a white (Caucasian)." (*Id.* at ¶ 4). This search would have revealed his collection of self-described "racially charged tattoos (i.e. swastika[ ]s...etc.)," allegedly the cause of the ensuing altercation. (*Id.* at ¶ 4). Plaintiff alleges that Wilson, who is black, used racially offensive language, and plaintiff admits to responding in kind. (Compl., ¶¶ 8-9). After the search, plaintiff was escorted

---

[1] Plaintiff did not submit any evidence or affidavits in opposition to defendants' motion. All exhibit references herein are exhibits attached to defendants' brief in support of their motion for summary judgment (docket # 19), unless otherwise noted.

by defendant Wilson and defendant RUO Nicholas Groom to his Unit 8 cell.  (*Id.* at ¶¶ 11-22).
Plaintiff alleges that Wilson struck him in the face three to five times, without warning, while
plaintiff's hands were cuffed behind his back.[2]  (Compl., ¶ 14).  Plaintiff also alleges that Groom
"did not participate in [d]efendant Wilson's actions," but had a "reasonable opportunity to intervene
but simply refused to do so.  (Compl., ¶ 17).  The last part of this escort is captured on security
camera and is some seven seconds in length.  It reveals nothing remarkable and ends with plaintiff
secured in his cell.  (Ex. 3).

Between one and two hours after being placed in his cell, plaintiff spoke to Officer
Troy Simon, then passing by on patrol.  (Ex. 4, docket # 19-5, ID # 98).  Plaintiff claimed he needed
to see a nurse, was told none were available, and explained that he had been assaulted.  Officer
Simon told plaintiff he would need to speak to a sergeant.  *Id*.  At that time, Simon noticed "some
swelling near his left eye," and when he passed by again several hours later (now the early morning
of August 15, 2010), "he appeared to have bruising around both eyes."  *Id*.  The matter was taken
up by Officer Pamela Turner who listened to plaintiff's allegations.  (*Id.* at ID # 100).  Turner
contacted Lieutenant Laurence Andres to inform him of the situation, and called registered nurse
(RN) Robert Prevo to secure medical attention for plaintiff.  Plaintiff was informed he would need
to write a statement, get photos taken, and be evaluated and treated by RN Prevo.  Plaintiff informed
Turner he did not wish to do any of this, and would talk to an inspector "on Monday."  *Id*.

---

[2] Defendant Wilson denies making any demeaning comments and states that he never hit
plaintiff.  (Wilson Aff. ¶¶ 3-12, Ex. 1).  The incident that plaintiff alleges "is absolutely false and
never occurred."  (*Id.* at ¶ 8).  Defendant Groom's affidavit (Ex. 2) states that the alleged assault on
plaintiff "is completely fabricated."  (*Id.* at ¶ 6).

Lt. Andres arrived, listened to plaintiff's allegations, and was similarly rebuffed in attempting to secure a written statement, evidentiary photos and a medical evaluation.  (*Id*. at ID # 108).  Plaintiff "became somewhat agitated and defensive, refusing to comply with my requests." (*Id.*).  After continuing his rounds, Andres offered plaintiff "one more opportunity" to comply, and plaintiff relented.  Andres filmed the subsequent examination, but plaintiff "refused to continue the interview or answer my questions with the camera present." (*Id.*).  Off-camera, plaintiff claimed his routine strip search led to a heated exchange with RUO Wilson, including the alleged use of racial epitaphs by both parties.  Plaintiff claimed that Wilson struck him in the face multiple times, without warning or provocation, during the escort to his cell.  Additionally, plaintiff asserted Groom did nothing, and joined Wilson in verbally harassing and degrading him.  (*Id.*).

RN Prevo examined plaintiff, on film (Ex. 3; Compl., ¶ 25).  Prevo concluded that there was no need for further treatment at that time, that all injuries were limited to plaintiff's face, that plaintiff exhibited bruising under both eyes and swelling on his left cheek, and that there was "no indication of being struck, just swelling in the area."  (Ex. 3).  There were "no tears or lacerations to the skin, no discoloration or redness to the cheek area."  (Ex. 5, docket # 19-6, ID # 132).  Prevo's account of his medical conclusions are substantively identical to those in the sole evidentiary exhibit provided by plaintiff in his complaint.  (Compl., Ex. A, docket # 1-1, ID # 11).

Plaintiff filed a grievance against defendant Wilson on August 16, 2010, and a second grievance on September 10, 2010, in which he claimed his initial grievance was not being processed properly.  (Plf. Aff., ¶ 29-34).  The results of the investigation into the incident were filed on November 10, 2010, concluding that there was insufficient evidence to support plaintiff's allegations.  (Ex. 5, docket # 19-6, ID # 128-29).  Thereafter, plaintiff filed his complaint on

September 24, 2010, praying for compensatory and punitive damages from defendants Wilson and

Groom, reasonable attorney fees and costs, and a preliminary injunction and/or temporary restraining

order. Defendants responded with this motion for summary judgment, or, alternately, dismissal on

the grounds that they are protected by qualified immunity.

### Discussion

**A.      Declaratory and Injunctive Relief**

Plaintiff's complaint concerns the conditions of his confinement at IBC. His claims

for declaratory and injunctive relief are rendered moot by his current confinement at the Oaks

Correctional Facility. *See Cardinal v. Metrish*, 564 F.3d 794, 789-99 (6th Cir. 2009); *Kensu v.*

*Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Plaintiff's claims for prospective relief are therefore moot.

**B.      Eleventh Amendment Immunity**

All plaintiff's claims for damages against defendants in their official capacities are

barred by Eleventh Amendment immunity.[3]  A suit against a state officer in his official capacity is

simply another way of pleading an action against the State. *See Will v. Michigan Dep't of State*

*Police*, 491 U.S. 58, 71 (1989); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). Reference to

the State's immunity from suit as Eleventh Amendment immunity is somewhat of a misnomer,

because the phrase is "convenient shorthand" for "the sovereign immunity of the States [that] neither

---

[3]Because it implicates important questions of federal court jurisdiction and federal-state comity, it is appropriate for the court to raise the issue of Eleventh Amendment *sua sponte  See S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008); *see also Wisconsin Dep't of Corr. v. Schact*, 524 U.S. 381, 389 (1998); *Edelman v. Jordan*, 415 U.S. 651, 678 (1974); *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009); *Nair v. Oakland County Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006).

derives from, nor is limited by, the terms of the Eleventh Amendment" but is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ... except as altered by the plan of the convention or certain constitutional Amendments." *Alden v. Maine*, 527 U.S. 706, 712-13 (1999). "Immunity from private suits has long been considered central to sovereign dignity." *Sossaman v. Texas*, 131 S. Ct. 1651, 1657 (2011). "Sovereign immunity principles enforce an important constitutional limitation on the power of the federal courts." *Id.* The three exceptions to a State's sovereign immunity are: (1) when the state has consented to suit; (2) when Congress has properly abrogated the State's immunity; and (3) when the suit is for prospective injunctive relief under the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908). *See S & M Brands*, 527 F.3d at 500. The *Ex parte Young* exception does not apply because plaintiff's claims for injunctive relief are moot. Congress has not abrogated the State's immunity in this area. *See Virginia Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011)("[A]bsent [] valid abrogation [by Congress through appropriate legislation under section five of the Fourteenth Amendment] federal courts may not entertain a private person's suit against a State."). The State has not waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir.2004). Although a State may "choose to waive its  immunity in federal court at its pleasure," "[w]aiver may not be implied." 131 S. Ct. at 1658. A clear indication of the State's intent to waive its immunity is required. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002). There is no "clear indication" that Michigan intended to waive its immunity on plaintiff's claims for

-8-

damages against defendants in their official capacities.  These claims are barred by the State's sovereign immunity.

### C.    Motion for Summary Judgment

#### 1.    Eighth Amendment Claim Against Wilson

As a prisoner incarcerated under a criminal conviction, plaintiff's principal substantive rights are guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Ingraham v. Wright*, 430 U.S. 651, 664 (1977).  The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crimes.  To establish a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, the offending conduct must reflect an unnecessary and wanton infliction of pain. *See Ingraham*, 430 U.S. at 670.  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause the core judicial inquiry is that set out in *Whitley [v. Albers*, 475 U.S. 312, 320-21 (1986)]: whether the force was applied as a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *accord Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010); *Barker v. Goodrich*, No. 10-3195, ___ F.3d ___, slip op. at 7 (6th Cir. Aug. 10, 2011).  Plaintiff must satisfy both an objective and subjective test to establish a viable Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).

With regard to the objective component, it must be determined whether the deprivation was, "objectively, 'sufficiently serious'" to offend constitutional standards. *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. at 298).  The objective component of

an Eighth Amendment claim is "contextual."  *Hudson v. McMillian*, 503 U.S. at 8; *Barker*, No. 10-3195, slip op. at 8.  Physical contact is necessary for purposes of prison security and order during the processes of escorting prisoners and searching them for dangerous items.  Thus, not every push or shove offends constitutional standards.  *See Hudson v. McMillian*, 503 U.S. at 9; *accord Brikho v. Horan*, 146 F. App'x 13, 15 (6th Cir. 2005).  The federal courts have long held that an Eighth Amendment claim based on the excessive use of force must allege more than a simple assault and battery.  *See, e.g., Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).  However, the Supreme Court made clear in *Hudson v. McMillian* that guards may not inflict an unjustified beating upon a prisoner and then seek to defend their actions by the lack of serious or life-threatening injuries.  *Hudson v. McMillian,* 503 U.S. at 9.

In assessing the record to determine whether there is any genuine issue of material fact, the court cannot make credibility judgments and must view the evidence in the light most favorable to the non-moving party.  *See General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006).  Plaintiff alleged in his verified complaint that he offered no resistance and that all the force Wilson used against him was gratuitous.  He specifically alleged that Wilson struck him in the face three to five times, while plaintiff's hands were cuffed behind his back.  If plaintiff's allegations are believed, a reasonable trier of fact could find in his favor on the objective component of an Fourteenth Amendment claim against Wilson, as plaintiff alleges the use of punishing force without any penological justification.

The subjective element of an Eighth Amendment excessive force claim is the requirement that the defendant have a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. at 5.  The plaintiff is required to show that the defendants acted "maliciously and sadistically

for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Id.* at 6 (quoting *Whitley v. Albers*, 475 U.S. at 320-21); *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "In determining whether the use of force was wanton and unnecessary, it may [ ] be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of the forceful response." *Hudson v. McMillian,* 503 U.S. at 7 (internal quotations and citations omitted); *see Williams*, 631 F.3d at 383. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers,* 475 U.S. at 321; *see Johnson v. Perry*, 106 F. App'x 467, 469 (6th Cir. 2004). Plaintiff alleged that he offered no physical resistance, yet was subjected to gratuitous physical abuse by defendant Wilson while restrained. The security footage does not resolve this issue, and the specific allegations of the verified complaint are at odds with the affidavits of the officers. I find that a reasonable trier of fact could find in plaintiff's favor on the subjective component of an Eighth Amendment claim against defendant Wilson.

       In seeking summary judgment on plaintiff's Eighth Amendment claim, Wilson makes the mistake of arguing only his version of the facts and ignoring plaintiff's verified complaint, or dismissing it as "implausible." (Def. Brief at 6-7). Defendants' brief relies on two affidavits, those of defendants Wilson and Groom, which state simply that plaintiff's allegations are groundless and the escort was conducted in a routine fashion. (Exs. 1 and 2, docket #s 19-2 and 19-3, ID #s 84-92). The rest of the evidence provided is inconclusive, irrelevant or, overwhelmingly, inadmissible. Exhibit 3, pulled from security footage, shows an unremarkable end to the escort, but proves nothing

-11-

concerning the events between plaintiff's strip search and the last seven seconds of his escort, when the alleged assault occurred. There are no affidavits from Officer Simon, Officer Turner, Lt. Andres, or Nurse Prevo. The critical incident report (Ex. 4) and the internal affairs report (Ex. 5) are hearsay, and defendants have not argued that the reports satisfy any exception to the general proscription against admission of hearsay. *See Snelling v. Chapin*, No. 1:09-cv-340, 2010 WL 5125579, at * 2 (W.D. Mich. Nov. 1, 2010). The photographs found in Exhibit 4 (docket # 19-5 at ID#s 114-18) are unintelligible.

As the moving party without the burden of proof, Wilson has failed to take the verified nature of plaintiff's complaint into account and failed to present sufficient evidence of fabrication to eliminate that issue. *See Morris v. Oldham County Fiscal Court*, 201 F.3d at 787; *see also Minadeo v. ICI Paints*, 398 F.3d at 761. Wilson's affidavit is not sufficient to negate any genuine issue of fact regarding his use of force. It creates an issue, which must be resolved by the trier of fact. In summary, I conclude that genuine issues of material fact preclude summary judgment on plaintiff's Eighth Amendment claim against defendant Wilson.

2.    Officer Groom

Plaintiff's claim against defendant Groom also arises under the Eighth Amendment. A defendant may be liable for failure to intervene to present a physical assault against an inmate by a fellow officer, when the failure to do so amounts to deliberate indifference. *See Durham v. Nu'Man*, 97 F.3d 862, 867 (6th Cir. 1997); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). Plaintiff's verified complaint alleges only that during Wilson's alleged assault, "Defendant

Groom was present and though he did not participate in Defendant Wilson's actions, he [ ] had a reasonable opportunity to intervene but simply refused to."  (Compl., ¶ 17).

A prison guard is not a guarantor that an inmate will be free from misconduct by a fellow officer.  Rather, an officer who does not personally take part in an assault is liable under section 1983 only if "he should have been aware of the reasonable likelihood of a potential attack and intervened earlier."  *Carico v. Benton, Ireland & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003) (distinguishing *McHenry*, in which the officer provided an opportunity for the attack and stood idly by while a known attack took place).  The constitutional standard governing the liability of such officers remains the "deliberate indifference" standard under the Eighth Amendment, *see Curry v. Scott*, 249 F.3d 493, 506-08 (6th Cir. 2001), so mere negligence or slowness to act is insufficient.  Rather, Eighth Amendment liability attaches only if the officer had a realistic opportunity to intervene and prevent the harm yet did not intervene. *See Bletz v. Gribble*, 641 F.3d 743, 754 (6th Cir. 2011); *see also Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (officer could not be held liable for failing to prevent another officer from striking plaintiff with a "rapid succession" of blows); *Davis v. Egbert*, No. 07-2135, 2010 WL 2326251, at * 8 (D.N.J. June 7, 2010).

The proofs in the present case are insufficient to create a triable Eighth Amendment claim against Officer Groom.  The complaint alleges, in conclusory fashion, that Groom had a "reasonable opportunity" to intervene but did nothing.  Although this sort of conclusory allegation, devoid of supporting facts and circumstances, may be sufficient to state a claim against Groom, it is insufficient at the summary judgment stage.  Groom's affidavit contains specific assertions that there was no physical contact between Wilson and plaintiff and no reason for Groom to intervene.

-13-

(Groom Aff. ¶ 7, docket # 19-3). This was sufficient to meet Groom's initial burden and to shift to plaintiff the burden of producing specific, admissible evidence which, if believed, could establish a claim of deliberate indifference against Groom. Plaintiff failed to respond to the summary judgment motion, leaving the allegations of his verified complaint as the only contrary evidence. The conclusory allegation that Groom had a reasonable opportunity to intervene, unsupported by any specific facts to support it, does nothing to establish an Eighth Amendment claim.

I conclude that Groom is entitled to summary judgment on plaintiff's Eighth Amendment claim against him, for failure to support that claim with any proof.

### D. Qualified Immunity

Defendant Wilson also asserts qualified immunity. The first prong of qualified immunity analysis is whether the plaintiff has alleged and supported with evidence facts showing that the defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

With regard to the first prong, as detailed above, I find that plaintiff, at this stage, has alleged and supported with sufficient evidence facts on which a reasonable trier of fact could find that his Eighth Amendment rights were abridged by Wilson's striking him in the face, while plaintiff was handcuffed and offering no resistance.

The remaining inquiry in the qualified immunity analysis is whether plaintiff has alleged and supported with evidence a violation of clearly established law.  In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted.  *Saucier v. Katz*, 533 U.S., at 206, 121 S. Ct. 2151 (qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force.'").  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198.  The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201).  "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'"  *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'").  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see O'Malley v. City of Flint*, No. 09-2037, ___ F.3d ___, 2011 WL 3055227, at * 3 (6th Cir. July 26, 2011).  "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v.*

-15-

*McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201).  Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional, in light of preexisting law, the unlawfulness must be apparent.  *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Roth v. Guzman*, No. 10-3542, ___ F.3d ___, 2011 WL 2306224, at * 7 (6th Cir. June 13, 2011); *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009).

The facts stated in plaintiff's verified complaint, if believed, establish a violation of clearly established law.  A prison guard's use of excessive force against an unresisting and restrained prisoner is clearly a violation of federally guaranteed rights.  *See Hudson*, 503 U.S. at 7-10 (striking shackled prisoner violated Eighth Amendment even in the absence of serious injuries); *Moore v. Holbrook*, 2 F.3d 697, 700-01 (6th Cir. 1993).

## **Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claims for declaratory and injunctive relief be dismissed as moot.  I further recommend that plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.  I further recommend that defendants' motion for summary judgment (docket # 18) be granted in part and denied in part.  The motion of defendant Groom should be granted and judgment entered in his favor.  The motion of defendant Wilson should be denied.

Dated:   August 17, 2011                    /s/  Joseph G. Scoville
                                                              United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).

-17-